```
               UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF MISSISSIPPI
                      JACKSON DIVISION
```

JAMES H. HENDERSON                                         PLAINTIFF

VS.                                      CIVIL ACTION NO. 3:05CV34LS

BARBOUR INTERNATIONAL, INC. AND
RODNEY A. BARBOUR, INDIVIDUALLY                           DEFENDANTS


                    MEMORANDUM OPINION AND ORDER

    This cause is before the court on motion of defendants Barbour International, Inc. and Rodney A. Barbour for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff James H. Henderson has responded in opposition. Having considered the memoranda and submissions of the parties, the court concludes that defendants' motion should be granted in part and denied in part as set forth herein.

    On January 12, 2005, plaintiff filed this action against his former employer, Barbour International, and its president, Rodney Barbour, alleging claims of wrongful termination, tortious interference with business and/or contractual relations, breach of contract and negligence. Specifically, Henderson claims that he was discharged in January 2004 for refusing to participate in or condone defendants' "improper, illegal and fraudulent activity." Plaintiff further claims that by discharging him under those circumstances, Rodney Barbour tortiously interfered with his contractual relations with Barbour International. Finally, Henderson claims that defendants' failure to pay him annual

bonuses and provide him thirty days' written notice of his termination amounted to a breach of his contract of employment. Defendants have moved for summary judgment on each of plaintiff's claims, contending that he was terminated due to his failure to generate profitable sales and the financial condition of Barbour International.

Barbour International, a Mississippi corporation located in Brandon, Mississippi, sells cooking products, including turkey fryers, under the brand name "Bayou Classic." The company was founded in 1986 and is owned by defendant Rodney Barbour. Plaintiff was hired by defendants in May 2002 as vice president of sales pursuant to a written employment agreement and remained in that position until January 2004. As vice president of sales, Henderson was responsible for the promotion and sale of Barbour International's products.

In August 2003, Meijer, Inc., a retailer located in Michigan, ordered approximately 13,000 30-quart turkey fryer units. Shortly after shipment, Henderson received a call from a representative of Meijer who informed him that it had received 26-quart fryer units, instead of the 30-quart units it had ordered. Plaintiff testified in his deposition that he contacted Barbour International's general manager, Johnny McKinnon, who confirmed that he had shipped Meijer the 26-quart units at the direction of Rodney Barbour. According to Henderson, when he then asked Barbour about the shipment, Barbour told him that Meijer had been shipped a mix

of 26- and 30-quart units and that due to a shortage of boxes, some of the 30-quart units had been packaged in boxes labeled "26 quart."[1]  Plaintiff testified that in an effort to remedy the situation, Barbour International sent Meijer stickers reading "30 quart" to be placed on the boxes that were originally labeled "26 quart."  Meijer apparently did this, but then told Henderson that its customers were returning the turkey fryers, complaining that while the box indicated it contained a 30-quart turkey fryer, it actually contained a 26-quart turkey fryer.  Henderson related the situation to Barbour by e-mail on November 25, 2003, to which Barbour, in reply, advised Henderson to tell Meijer to remove the stickers because it was nearly impossible to tell by inspection which boxes actually contained a 30-quart unit.

On January 14, 2004, Barbour informed Henderson that he was being terminated, and approximately one year later, Henderson filed the instant action.  In his complaint, plaintiff first asserts a claim of wrongful termination, asserting that he was fired in retaliation for refusing to participate in and objecting to defendants' "improper, illegal and fraudulent activity," specifically, the defrauding of customers and misleading of the general public.

To succeed on his claim of wrongful termination, Henderson is required to prove he was fired for either refusing to follow

---

[1] It is unclear from the record whether Meijer was informed that the shipment contained a mix of 26- and 30-quart fryers.

3

defendants' directive to commit illegal activity or for exposing illegal activity in the workplace.  See McArn v. Allied Bruce-Terminix Company, 626 So.2d 603, 607 (Miss. 1993).  To support such a claim, the alleged illegal acts must warrant the imposition of criminal penalties, not merely civil penalties. See Hammons v. Fleetwood Homes of Miss., Inc., 907 So. 2d 357, 360 (Miss. Ct. App. 2004)(noting that the McArn exception requires that "the acts complained of warrant the imposition of criminal penalties, as opposed to mere civil penalties").  In their motion, defendants deny that Henderson's termination was due to the Meijer transaction but assert that even assuming for the sake of argument that it was, they still are entitled to summary judgment on this claim because plaintiff has failed to show that defendants engaged in any criminally illegal act.

In response, plaintiff contends that defendants' attempt to "pass off" 26-quart turkey fryers as 30-quart turkey fryers constituted a violation of Mississippi's consumer protection laws, specifically § 75-24-5, which does carry criminal penalties.[2]  In

---

[2]  While plaintiff argues that defendants' conduct violates § 75-24-5(2)(a), which prohibits "[p]assing off goods or services as those of another," it appears that his claim is better characterized as a violation of § 75-24-5(2)(e), which prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ", or § 75-24-5(2)(g), which prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," in that he contends that defendants misrepresented a characteristic of the product, not the source of the product.  This misstep is not fatal to his claim.

rebuttal, defendants first submit that because plaintiff did not identify this statute in his compliant as the basis for his claim, then he may not rely on the statute to salvage his claim. This argument is not well taken. Plaintiff's complaint clearly alleges that defendants attempted to pass off 26-quart turkey fryers as 30-quart turkey fryers and that such actions were "improper, illegal and fraudulent" and intended to "defraud[] customers and mislead[] the general public". While plaintiff did not specifically cite Mississippi's consumer protection statute, it is not unreasonable to conclude that the facts, as alleged in the complaint, suggested a violation of the statute which clearly allows criminal and civil penalties for misrepresentations in the sale of products.

In the alternative, defendants suggest that the statute does not apply to them because the alleged acts, that is, the re-labeling of the boxes and selling of the products to consumers, occurred in Michigan, not Mississippi. This argument is similarly unpersuasive. While the products were ultimately sold in Michigan, the alleged misrepresentation arose from conduct which occurred in Mississippi, namely, supplying 26-quart fryers in response to an order for 30-quart units and ultimately representing that the boxes contained 30-quart units and supplying labeling which indicated that the boxes contained 30-quart fryers, regardless of whether they did or not. Based on these

allegations, the court cannot conclude as a matter of law that defendants' action did not violate Mississippi's consumer protection laws.  As such, defendants' motion for summary judgment as to plaintiff's wrongful termination claim will be denied.

Plaintiff has also asserted that Rodney Barbour, by intentionally terminating plaintiff's employment with Barbour International for refusing to participate in his allegedly fraudulent substitution of products, tortiously interfered with plaintiff's contractual relations with Barbour International.[3] "When a person causes another to breach a contract with some third person, the tort is one of interference with performance of a contract." Par Industries, Inc. v. Target Container Co., 708 So. 2d 44, 48 (Miss. 1998).  Defendants submit, and the court agrees, that inasmuch as Rodney Barbour is president and owner of Barbour International and in fact signed Henderson's employment contract on behalf of the company, he is effectively a party to the contract and thus cannot interfere with that contract.  See 72

---

[3] While plaintiff's complaint sets forth a claim of "tortious interference with business and/or contractual relations," his claim is more properly characterized only as for tortious interference with contractual relations.  See Par Industries, Inc. v. Target Container Co., 708 So. 2d 44, 48 (Miss. 1998)("As differentiated from interference with contract, the tortious interference with business relations occurs when a person unlawfully diverts prospective customers away from one's business, and this tort is sometimes referred to as 'malicious injury to business.'")

A.L.R. 4th 492 (recognizing that "generally a corporate director, officer, or employee is not liable for tortiously interfering with a corporate contract, because he is considered a party to the contract").  Accordingly, summary judgment as to plaintiff's tortious interference with contractual relations claim is in order.

As for plaintiff's breach of contract claims, Henderson argues in his brief that he was not given a thirty-day written notice of his termination, that he was not paid an annual bonus while employed, and that defendants breached the implied covenant of good faith and fair dealing.[4]  With respect to plaintiff's claim that his employment contract provided for thirty days' prior written notice of termination, defendants argue that the evidence shows that Henderson was given proper notice and following dismissal was paid according to the terms of his contract. Specifically, in his responses to defendants' first requests for admissions, Henderson admitted that he was given thirty days' notice of his termination on January 14, 2004.  He further admitted that on January 19, 2004, Rodney Barbour gave him a check representing his pay for the thirty-day notification period, and he confirmed in his deposition that he received pay for the thirty days' notice period.  In addition, in the recitation of facts in

---

[4] In his complaint, Henderson vaguely describes his breach of contract claim as defendants' failure to "satisfy certain debts."

7

plaintiff's complaint, he states that on January 14, 2004, Rodney Barbour "notified Henderson that his employment was terminated effective February 15, 2004."  Moreover, defendants have attached a copy of plaintiff's termination letter, signed by Rodney Barbour and Henderson, which confirms these dates.  The court agrees that the evidence shows that plaintiff received proper notice of his termination and compensation as required by his contract.

Henderson's contract of employment also provided for a yearly cash bonus "based upon his performance, in accordance with specific annual objectives as approved by the Board of Directors of Barbour in its sole discretion."  Henderson takes issue with the fact that he did not receive a bonus for 2002 or 2003 and criticizes Barbour International for only giving him broad performance objectives during his employment, such as "increasing customers" and "profitable sales."  He submits that under his management, Barbour International acquired sixty-three new customers and increased total sales by approximately 1.5 million dollars in 2003 and therefore contends that he should have been paid a bonus.  Defendants argue that Henderson's bonus, under the contract of employment, was entirely discretionary and that plaintiff's opinion as to whether or not he should have received a bonus is immaterial.  Henderson does not dispute that the annual bonus was discretionary and explained in his deposition that while he did not receive a bonus in 2002, he nevertheless decided to

8

remain at Barbour International in hopes of receiving a bonus in 2003, acknowledging however that "nothing is a guarantee."[5] Having reviewed the evidence, the court agrees that summary judgment is warranted on this claim.

Lastly, in his response to the motion for summary judgment, plaintiff has alleged that Barbour International breached the implied covenant of good faith and fair dealing by terminating him for failing to participate in defendants' alleged criminal acts.[6] Given that "'bad faith' implies some conscious wrongdoing 'because of dishonest purpose or moral obliquity,'" Harris v. Mississippi Valley State University, 873 So. 2d 970, 987 (Miss. 2004)(quoting Bailey v. Bailey, 724 So. 2d 335, 338 (Miss. 1998)), the court is of the opinion that this allegation is merely a recharacterization of plaintiff's wrongful termination claim.  Moreover, plaintiff's complaint does not contain any reference to the implied covenant of good faith and fair dealing, and his breach of contract claim refers only to defendants' failure to "satisfy certain debts."

---

[5] Defendants further argue that Barbour International was justified in denying plaintiff an annual bonus, pointing to Rodney Barbour's testimony that the company sustained losses during Henderson's employment.  In support of their position, defendants have attached an e-mail from Rodney Barbour to Henderson, which contains Rodney Barbour's statement, "We are in this together and when the company losses [sic] money, we don't deserve a bonus."

[6] Henderson further alleges that defendants' refusal to pay him a bonus and failure to provide him with specific annual objectives amounted to bad faith.  This claim, in the court's opinion, is simply a restatement of his argument that defendants' failure to pay him a bonus amounted to a breach of contract.

9

Based on plaintiff's failure to assert a breach of implied covenant of good faith and fair dealing in his complaint, combined with the court's conclusion that plaintiff will still be able to maintain the substance of this allegation through his wrongful termination claim, the court concludes that this claim should be dismissed.[7]

Also before the court is defendants' counterclaim that Henderson breached his contract of employment with Barbour International after his termination by contacting employees of Barbour International and inducing them to leave their employment, by failing to return its confidential sales and customer information, and by accepting employment with a corporation which engages in business similar to Barbour International.  Defendants also contend he breached his employment contract during his employment with Barbour International by refusing to relocate from Georgia to Mississippi.  Defendants have moved for partial summary judgment in their favor on the claims that he contacted Barbour International's employees and induced them to leave their employment and that he failed to return confidential sales and customer information.

Having considered the parties' respective positions on these claims, the court concludes that genuine issues of material fact exist which preclude summary judgment as to defendants' claims.

---

[7] Plaintiff has conceded his negligence claim.

Based on the foregoing, defendants' motion for summary judgment is granted with respect to plaintiff's claims of tortious interference with contractual relations, breach of contract and negligence, denied with respect to plaintiff's wrongful termination claim, and denied with respect to defendants' counterclaim.

SO ORDERED this 20th day of March, 2006.

                                              /s/ Tom S. Lee
                                           UNITED STATES DISTRICT JUDGE